UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LEE S. HARAMIS, SR., etc.,

  Plaintiff,

v.                                                    Case No.3:11-cv-455-J-12JBT

ALLSTATE PROPERTY AND CASUALTY
INSURANCE COMPANY, etc.,

  Defendant.

---

## ORDER

This cause is before the Court on Defendant's Motion for Summary Judgment on Plaintiff's Complaint (Doc. 4)("motion for summary judgment"), filed May 9, 2011. On June 2, 2011, Plaintiff's Opposition to Defendant's Motion for Summary Judgment (Doc. 16) was filed. Defendant's Reply in Support of its Motion for Summary Judgment (Doc. 28), was filed on July 7, 2011. On September 7, 2011, the Court conducted a hearing on the motion. Plaintiff supplemented his opposition to the motion for summary judgment (Doc. 37), on September 13, 2011. For the reasons set forth below, the Court will deny Defendant's motion for summary judgment.

### Facts

Plaintiff, Lee S. Haramis, Sr., as personal representative of the estate of his daughter, filed Plaintiff's Uninsured Motorist Complaint ("Complaint")(Doc. 3) in state court seeking to recover uninsured motorist benefits from Defendant Allstate Property and Casualty Insurance Company. Plaintiff's single count Complaint alleges that the negligence of the driver of a phantom vehicle contributed to the motor vehicle accident on

April 17, 2009 ("the accident"), which resulted in the death of his daughter, and that Defendant has refused to pay Plaintiff uninsured motorist benefits under the insurance policy.

Defendant removed the case to this Court (see Docs. 1 and 11). Defendant seeks summary judgment on the basis that Plaintiff claimed and recovered policy benefits arising from the accident in a prior state court lawsuit against its insured, and in conjunction with the settlement of that lawsuit, executed a Complete Release of All Claims and Agreement to Hold Harmless and Indemnify ("Release") (Doc. 4-2 at 6-12) which precludes the recovery of uninsured motorist benefits in this case. For the reasons set forth below, the Court finds that the terms of the Release are ambiguous giving rise to a question of material fact and therefore Defendant's motion for summary judgment (Doc. 4) must be denied.

## Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The purpose of summary judgment is to dispose of unsupported claims or defenses which, as a matter of law, do not raise issues of material fact suitable for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In determining whether the movant is entitled to summary judgment, the Court must view all the evidence and factual inferences reasonably drawn from the evidence in the light

2

most favorable to the non-moving party, and must resolve all reasonable doubts in favor of the non-movant. See, e.g., Rioux v. City of Atlanta, Georgia, 520 F.3d 1269, 1274 (11th Cir. 2008)(citations omitted).

## Analysis Under Applicable Law

The sole issue before the Court on Defendant's motion for summary judgment is whether the Release (Doc. 4-2 at 6-12) entered into by Plaintiff, Defendant, and Defendant's insured, Lisa Collins, a/k/a Lisa Ann Lee, as part of the settlement of a state court negligence action, precludes Plaintiff's claim for uninsured motorist benefits under the same insurance policy for the alleged negligence of the driver of a phantom vehicle in this action. As discussed below, the Court finds that a question of fact remains as to the scope of the Release based on its terms and that summary judgment on this issue is not appropriate.

The Release's title, "Complete Release of All Claims and Agreement to Hold Harmless and Indemnify," and various provisions contain broad language that lends support to Defendant's position that it was intended to preclude any further claims related to the accident. For example, the Release states that

> Plaintiff, hereby releases and forever discharges: [Defendant's insured and Defendant] from any and all liability through any claims, demands, actions, causes of action, suits of any kind or nature (other than claims for first-party insurance, medical, or governmental benefits from other entities not named herein), for damages known or unknown, which have allegedly resulted from or may in the future develop [from the accident], and from any claims whatsoever arising from allegations of bad faith dealing, breach of insurance contract, negligent claims adjustment or otherwise actionable conduct by [Defendant] in its claims defense activities pursuant [to the policy of Defendant's insured]...providing *bodily injury liability coverage... and property damage liability coverage*....

Doc. 4-2 at 6-7 (emphasis added). By the terms of this provision, Plaintiff appears to

3

release Defendant from any further claims related to the accident as well as from claims related to Defendant's handling of his claim, but reserves his right to assert claims for first party insurance, medical or governmental benefits against entities other than Defendant. The Court notes however, that this provision specifically refers to the bodily injury coverage and property damage liability coverage provided by the policy and the relevant policy limits, but fails to mention anything about uninsured motorist coverage.

Plaintiff releases Defendant a second time from "any claims whatsoever arising from allegations of bad-faith or actionable or negligent claims practices by [Defendant] in its activities in defending the claims made by [Plaintiff]" against [Defendant's insured's policy], and a third time by agreeing that "his claims for bad faith or otherwise actionable claims practices or breach of the insurance contract" arise out of the rights of Defendant's insured and are extinguished. Doc. 4-2 at 7.

Plaintiff acknowledges the purpose of the Release is to make

"a full, final and complete compromise, adjustment, and settlement of any and all claims, disputed or otherwise, on account of the damages arising out of [the accident], and on account of the claims made in excess of the policy limits afforded [Defendant's insured], and for the express purpose of excluding forever any further or additional claims of any kind arising out of the settlement of claims related to it.

Doc. 4-2 at 8. Plaintiff also warranted that he had "accepted payment of the sums specified herein as complete compromise and settlement of all claims against the persons and entities released...." Doc. 4-2 at 10. The Court notes that the only policy limits referenced in the Release are those for bodily injury coverage and property damage liability coverage. The release is silent as to uninsured motorist coverage limits.

While the provisions described above could support a finding that Plaintiff released

4

any claim he may have against Defendant for uninsured motorist benefits, the Court finds that absence of any mention of uninsured motorist coverage, as well as another provision of the Release call that conclusion into question. The Release also states that

> [t]he terms of this release and the amount of the settlement recited herein are in no way intended to release any other claim that [Plaintiff] may have, or have in the future, that is wholly *unrelated to the claims handling practices and/ or bad faith or otherwise relating to [the accident.*]

Doc. 4-2 at 9 (emphasis added). This provision further specifies Plaintiff's intent to pursue claims against entities connected to a tow truck involved in the accident. Id.

The Court is of the opinion that this provision could reasonably be read to express the intent of the parties to limit the Release to Plaintiff's claims related to Defendant's claims handling procedures and/or bad faith, but is not intended to release any other claims Plaintiff may have related to the accident. As discussed above, the Release specifically mentions Plaintiff's release of his claims related to bad faith or claims handling procedures in three different provisions, indicating that release of such claims was an important focus for the parties.

Even though this provision identifies some claims related to the accident that Plaintiff intended to pursue which are to be excluded from the Release, it does not purport to limit him to pursuit of the claims identified. As a result, the Court finds that this provision, along with references to bodily injury coverage and property damage liability coverage only, creates uncertainty or ambiguity regarding the scope of the Release.

In addition, in this case, Plaintiff seeks recovery of uninsured motorist coverage benefits for the negligence of an unknown driver under the policy of Defendant's insured. The check written to Plaintiff for payment under the policy contains the notation "final

5

payment *bodily injury coverage* arising from loss on 4-17-09." Doc. 35-1 or 37-2 (emphasis added). This notation, and the fact that the suit that gave rise to the Release was a suit by Plaintiff against Defendant's insured who was a party to the Release which never mentions uninsured motorist coverage or any other potential tortfeasor, arguably implies the Release was not meant to address any claims related to uninsured motorist coverage. See Doc. 4-2 at 1-5; *Cf.* Hurt v. Leatherby Insurance Company, 380 So.2d 432, 433-434 (Fla. 1980)("whether a general printed release is effective to discharge other than specifically named tortfeasors is a question of fact").

The Court's determination that the Release in this case is ambiguous is supported by several of the Florida cases cited by Plaintiff. See Doc. 16 at 4-7. While the cases arise in the context of reviewing settlement proposals for compliance with Florida's Offer of Judgment statute (Fla. Stat. § 768.79) and with the particularity requirement of Fla.R.Civ.P. 1.442, their holdings rely on the proposition that an expansive general release of potential claims against an insurer may be deemed ambiguous and the scope of the release a question of fact if it does not clarify which known or outstanding claims will be extinguished. See, e.g., State Farm Automobile Insurance Company v. Nichols, 932 So.2d 1067, 1078-1080 (Fla. 2006)(Expansive language in a general release may meet the particularity requirement if it is clear and unambiguous, by clarifying which outstanding claims will be extinguished. The settlement proposal did not address an outstanding uninsured motorist claim, but arguably required its release along with claims related to personal injury protection.).

For the reasons set forth above, the intent of the parties as to whether the Release excludes Plaintiff's claim for uninsured motorist benefits is not clear and the parties should

be given the opportunity to present all relevant evidence to the trier of fact. Because a genuine issue of material fact exists regarding the scope of the Release in this case, it is not appropriately resolved on a motion for summary judgment. Upon review of the matter, it is

**ORDERED AND ADJUDGED:**

That Defendant's Motion for Summary Judgment on Plaintiff's Complaint (Doc. 4) is denied.

**DONE AND ORDERED** this ___9th___ day of November 2011

*Howell W. Melton*
**SENIOR UNITED STATES DISTRICT JUDGE**

c: Counsel of Record